UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:22-CR-62-MTS-ACL |
| ) | |
| TANARIUS D. TWIGGS, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**
**BY UNITED STATES MAGISTRATE JUDGE**

Currently before the Court is Defendant Tanarius D. Twiggs' Motion to Dismiss Indictment.[1] (Docs. 45, 46, 68, 71.) The Government opposes the Motion. (Docs. 53, 69.)

I. Background

Defendant Tanarius D. Twiggs was indicted on one count of possession of a firearm by a felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). Twiggs was prohibited from possessing a firearm because he had previously been convicted of one or more crimes that were punishable by a term of imprisonment exceeding one year. The Indictment further alleges that prior to possessing the firearm on April 2, 2022, "Twiggs was convicted of at least three felony offense which were either violent felonies or felony drug offenses which were committed on occasions different from one another." (Doc. 2) Twiggs now moves to dismiss the Indictment.

---

[1] Pretrial matters have been referred to the undersigned United States Magistrate Judge under 28 U.S.C. § 636(c).

II.     The Motion

Twiggs raises a facial challenge to the constitutionality of § 922(g)(1), arguing that the Supreme Court's decision in *New York Rifle and Pistol Association v. Bruen*, 142 S. Ct. 2111 (2022), renders that statute incompatible with the Second Amendment right to bear arms.  Twiggs argues he "is among 'the people' protected under the Second Amendment" (Doc. 46 at 4-6) and cites numerous courts that have concluded "non-law-abiding" people are protected by the Second Amendment (Doc. 57 at 2).  He further argues that the Government "cannot meet its burden to 'affirmatively prove' that § 922(g)(1) 'is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." (Doc. 45 at 1.)  Finally, he claims that all prior Eighth Circuit decisions holding § 922(g)(1) constitutional "were overruled by *Bruen*, unless those cases employed the one-step *Bruen* analysis."  (Doc. 57 at 12.)

The Government opposes Twiggs' request for dismissal arguing that the Supreme Court has not cast doubt on felon-dispossession statutes.  Noting that "in *Bruen*, six Justices took pains to reiterate that certain firearms regulations, including prohibitions on the possession of firearms by felons, are constitutional."  (Doc. 53 at 3.)  It then argues that Twiggs is not a member of "the people" protected by the Second Amendment.  The Government further provides a detailed explanation of how the Nation's historical tradition confirms that felons can be dispossessed of firearms.  The Government also notes that the Eighth Circuit has repeatedly rejected facial challenges to the constitutionality of § 922(g)(1)." *Id*. at 12.

Based on the analysis below, it is recommended that Twiggs' request for dismissal of the Indictment as facially unconstitutional be denied.

III.    Legal Analysis

The Second Amendment states, "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.

In *District of Columbia v. Heller*, the Supreme Court decided whether a law of the District of Columbia—which banned all handguns and required long-arms to be kept in an inoperable state within the home—impermissibly infringed on the right to keep and bear arms. 554 U.S. 570, 573 (2008). The Court held that the Second Amendment protects the "individual right to possess a firearm . . . and to use that arm for traditionally lawful purposes . . . ." *Id.* at 577. But like most rights in the Constitution, "the right secured by the Second Amendment is not unlimited." *Id.* at 626. *Heller* recognized that this Amendment "conferred an individual right to keep and bear arms." *Id*. at 595. After recognizing the individual right at the heart of the Second Amendment, the Court struck down the challenged law of the District of Columbia, finding that it deprived Heller of his individual right to keep a handgun at home for self-defense. *Id.* at 636.

In *McDonald v. City of Chicago*, the Court held "that the Due Process clause of the Fourteenth Amendment incorporates the Second Amendment right recognized in *Heller*." 561 U.S. 742 at 791 (majority opinion) (2010). The Court emphasized that while *Heller* struck "down a law that prohibited the possession of handguns in the home," it "recognized that the right to keep and bear arms is not 'a right to keep and carry any weapon whatsoever

in any manner and for whatever purpose." *Id*. at 786 (quoting *Heller*, 554 U.S. at 626). *McDonald* reiterated that the holding in *Heller* "did not cast doubt" on "longstanding regulatory measures as 'prohibitions on the possession of firearms by felons and the mentally ill,' 'laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of firearms.'" *Id.* (quoting *Heller*, 554 U.S. at 626–27). In so doing, the Court struck down Chicago's municipal code that, much like D.C. in *Heller*, effectively banned handgun possession by almost all city residents. *Id.* at 750.

In *Bruen*, the Court considered whether New York's state licensing law, which allowed an applicant to obtain a license to carry a firearm outside the home only by proving that "proper cause exists," 142 S. Ct. at 2123, deprived two "law-abiding, adult citizens," *id.* at 2125, of their right to carry a handgun for self-defense outside the home. New York courts interpreted "proper cause" to mean that an applicant must show a "special need for self-protection distinguishable from that of the general community." *Id.* (quoting *In re Klenosky*, 428 N.Y.S.2d 256, 257 (N.Y. App. Div. 1980)). This was a "demanding" standard that gave licensing officers great discretion in deciding who could exercise constitutional rights, in contrast to "shall issue" jurisdictions "where authorities must issue concealed-carry licenses whenever applicants satisfy certain threshold requirements, without granting licensing officials discretion to deny licenses based on a perceived lack of need or suitability." *Id.*

*Bruen* explained that "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The

government must justify its regulation by demonstrating that it is consistent with this Nation's historical tradition of firearm regulation." *Id.* at 2129–30. "Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Id.* at 2126 (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50, n.10 (1961)). *Bruen* "decided[d] nothing about *who* may lawfully possess a firearm." *Id.* at 2157 (Alito, J., concurring) (emphasis added).

The Supreme Court's holdings in *Bruen*, did not overturn *Heller* wherein the Court recognized the importance of "the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.'" *Heller*, 554 U.S. at 627 (citations omitted). *Bruen*, *Heller*, and *McDonald* dealt with "how and why the regulations [at issue] burden a law-abiding citizen's right to armed self-defense." *Bruen*, 142 S.Ct. at 2133. Notably, the petitioners and respondents in *Bruen* agreed that just as *Heller* and *McDonald* recognized "that the Second and Fourteenth Amendments protect the right of *an ordinary, law-abiding citizen* to possess a handgun in the home for self-defense[,]" such individuals "have a similar right to carry handguns publicly for their self-defense." *Id.* at 2122 (emphasis added.)

The Eighth Circuit engaged in a thorough discussion of how *Bruen* should be applied when there is a facial challenge to a regulation under the Second Amendment in *United States v. Sitladeen*, 64 F.4th 978 (8th Cir. 2023). The *Sitladeen* panel observed that "*Bruen* does not address the meaning of 'the people,' much less the constitutionality of criminal firearm statutes like § 922(g)(5)," *id.* at 984, which prohibits any alien who is

unlawfully present in the United States from possessing a firearm. *Sitladeen* noted that *Bruen* "clarified how a court must assess a Second Amendment challenge in general," *id*., as follows:

> [W]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with the Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command.

*Bruen*, 142 S.Ct. at 2126 (internal quotation marks omitted). *Sitladeen* then commented that *Bruen* repudiates means-end scrutiny employed by our sister circuits. 64 F.4th at 984 (referencing *United States v. Perez*, 6 F.4th 448, 453 (2d Cir. 2021), *cert. denied*, 142 S.Ct. 1133 (2022); *United States v. Torres*, 911 F.3rd 1253, 1257 (9th 2019); *United States v. Huirton-Guizar*, 678 F.3d 1164, 1169 (10th Cir. 2012).

"Following *Bruen*, instead of analyzing 'how close the law comes to the core of the Second Amendment right and the severity of the law's burden on that right,' a court must begin by asking *whether the firearm regulation at issue governs conduct that falls within the plain text of the Second Amendment*." *Id*. at 985 (quoting *Bruen*, 142 S.Ct. at 2126) (emphasis added). *Sitladeen* examined this question:

> If the regulation does govern such conduct, the court will uphold it so long as the government can "identify an American tradition justifying" the regulation. *Id*. at 2138. For the government to make this showing, it need not point to a "historical *twin*," but only an analogous, i.e., "relevantly similar," historical regulation that imposed "a comparable burden on the right of armed self-defense" and that was "comparably justified." *Id*. at 2132-33. Nevertheless, *Bruen* cautions that "not all history is created equal." *Id*. at 2136. Because "[c]onstitutional rights

are enshrined with the scope they were understood to have *when the people adopted them*," regulations in effect at or near the time of the Second Amendment's ratification carry more weight in the analysis than those that existed long before or after that period. *Id*.

*Id*. (quoting *Bruen* as cited and emphasis added in original).

To assess a facial challenge to a regulation under the Second Amendment, the first question is "whether [the statute] governs conduct that falls within the plain text of the Second Amendment." *Id*. (quoting *Bruen*, 142 S.Ct. at 2126). *Sitladeen* instructs that "[o]nly if the answer is yes do we proceed to ask whether [the statute] fits within America's historical tradition of firearm regulation.[ ]" *Id*. (quoting *Bruen*, 142 S.Ct. at 2126).

In *United States v. Bena*, the Eighth Circuit recognized that *Heller* did not articulate the "analytical basis for the presumptive constitutionality" for prohibitions on firearm possession. 664 F.3d 1180, 1182 (8th Cir. 2011) That said, it commented, "but we know at least that 'statutory prohibitions on the possession of weapons by some persons are proper,' and 'exclusions need not mirror limits that were on the books in 1791.'" *Id*. (quoting 664 F.3d 1180, 1182-84 (7th Cir. 2010). *Bena* then discussed the Nation's history relative to "the concept of a right to arms" dating back to "[p]roposals from the Founding period." *Id*. at 1182-84.

In *United States v. Jackson*, the Eighth Circuit explained that the *Bruen* decision did not cast doubt on *Heller*'s and *McDonald*'s statements that longstanding prohibitions on possession of firearms by certain persons, such as by felons, are presumptively valid. 69 F.4th 495, 501–02 (8th Cir. 2023). *Jackson* confirmed that this Nation's history shows Congress has the authority to "prohibit possession of firearms by persons who have

demonstrated disrespect for legal norms of society," and who are not law-abiding citizens. *Id.* at 504 (upholding constitutionality of statute prohibiting felons from possessing firearms, 18 U.S.C. § 922(g)(1)). Congress, in passing the Omnibus Crime Control and Safe Streets Act of 1968, prohibited "categories of presumptively dangerous persons from transporting or receiving firearms," and that determination was "not unreasonable." *Id.* at 504–05 (citations omitted). "[L]egislatures traditionally employed status-based restrictions to disqualify categories of persons from possessing firearms" regardless of whether "those actions are best characterized as restrictions on persons who deviated from legal norms or persons who presented an unacceptable risk of dangerousness." *Id.* at 505–06.

The Eighth Circuit resolved an "as-applied" challenge from an individual charged under § 922(g)(1) in *Jackson*. In so doing, it also:

> conclude[d] that legislatures traditionally employed status-based restrictions to disqualify categories of persons from possessing firearms. Whether those actions are best characterized as restrictions on persons who deviated from legal norms or persons who presented an unacceptable risk of dangerousness, Congress acted within the historical tradition when it enacted § 922(g)(1) and the prohibition on possession of firearms by felons.

69 F.4th at 505.

The conclusory paragraph by the *Bruen* majority "repeated that the right to keep and bear arms belonged to 'law-abiding citizens with ordinary self-defense needs.'" *Bruen*, 142 S.Ct. at 2156. Similarly, Justice Kavanaugh in his concurring opinion reiterated that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill . . . ." *Id.* at 2162 (Kavanaugh, J.,

concurring) (quoting *Heller*, 554 U.S. at 626) (alteration in original).  Thus, *Bruen* should not be seen as overruling or even upsetting the holdings and reasoning of *Heller* and *McDonald*, but instead "charts the same course" as those earlier precedents.  *Id.* at 2131–32.

Accordingly,

**IT IS HEREBY RECOMMENDED** that Twiggs' Motion to Dismiss the Indictment (Doc. 45) as facially unconstitutional be **denied**.

Further, the parties are advised that they have until not later than October 6, 2023, in which to file written objections to this Report and Recommendation, unless an extension of time for good cause is obtained.  Failure to file timely objections may result in a waiver of the right to appeal questions of fact.  *Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990).

Dated this 22nd day of September, 2023.

                s/*Abbie Crites-Leoni*
                ABBIE CRITES-LEONI
                UNITED STATES MAGISTRATE JUDGE