UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:22-cr-00062-MTS |
| | ) | |
| TANARIUS D. TWIGGS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**MEMORANDUM AND ORDER**

Pending before the Court are Defendant Tanarius Twiggs's Motion to Dismiss the Indictment, Doc. [45], and Motion to Suppress Evidence, Doc. [47]. Pursuant to 28 U.S.C. § 636(b), the Court referred Defendant's Motions to United States Magistrate Judge Abbie Crites-Leoni.

As to Defendant's Motion to Suppress Evidence, Defendant argues that his constitutional rights were violated when police officers searched the interior of his car without a warrant after he wrecked his vehicle. During an inventory search of the vehicle, police officers discovered a firearm between the driver and passenger front seats of the car. Defendant was indicted on one count of possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1) and 924(e). Defendant was prohibited from possessing a firearm because he had previously been convicted of one or more crimes that were punishable by a term of imprisonment exceeding one year. The Indictment further alleges that prior to possessing the firearm on April 2, 2022, "Twiggs was convicted of at least three felony offenses which were either violent felonies or felony drug offenses which were

1

committed on occasions different from one another." Doc. [2]. Defendant filed a Motion to Dismiss the Indictment, raising a facial challenge to the constitutionality of § 922(g)(1), arguing that the Supreme Court's decision in *New York Rifle and Pistol Association v. Bruen*, 142 S. Ct. 2111 (2022), renders that statute incompatible with the Second Amendment right to bear arms.

The Court held an evidentiary hearing on April 11, 2023, regarding the Motions. After the hearing, both parties filed post-hearing memoranda. After review of Defendant's Motions, Judge Crites-Leoni issued a Report and Recommendation ("Recommendation") recommending denial of Defendant's Motion to Dismiss the Indictment. Doc. [72]. Judge Crites-Leoni also issued a Recommendation recommending denial of Defendant's Motion to Suppress Evidence. Doc. [73]. Defendant filed Objections to the Recommendations, Doc. [76], and the Government filed a Response, Doc. [81]. The matter is now ripe for ruling. After a de novo review of the entire record, including a transcript of the evidentiary hearing and exhibits, including police body camera footage, the Court will overrule Defendant's Objections and deny his Motion to Suppress Evidence and Motion to Dismiss the Indictment.

## I.   Factual Background[1]

During the mid-afternoon of April 2, 2022, Cape Girardeau Police Officer Joseph Whistler was on routine patrol when he observed a blue Dodge Charger approaching his patrol vehicle. Officer Whistler was traveling north on Sprigg Street. The Charger was traveling at a high rate of speed in the opposite direction. Officer Whistler was able to position his patrol car behind the Charger when it stopped at an intersection further south on Sprigg Street. The driver and sole occupant of the vehicle (later identified as Defendant) appeared to notice Officer Whistler behind

---

[1] Defendant does not challenge any of the factual findings contained in the Recommendations. As such, the Court adopts and incorporates the factual findings of Judge Crites-Leoni's Recommendations.

2

him by using his side mirror. Defendant then rapidly accelerated west across Sprigg Street, nearly striking other vehicles. Officer Whistler attempted a traffic stop of the Charger, but the Charger fled. Officer Whistler pursued the vehicle for a short time; however, he terminated the pursuit when his "patrol vehicle reached a speed of 75 miles per hour on the city streets. . .due to the large amount of pedestrian vehicle traffic." Doc. [63] at 21. Prior to the pursuit, the Charger failed to stop at a stop sign. During the pursuit, the Charger failed to stop at approximately six stop signs. According to Officer Whistler, the Charger reached an estimated speed of "close to 100 miles an hour possibly in excess of that on the city streets." *Id*. Shortly thereafter, Officer Whistler observed the Charger at the intersection of Independence and Ellis where it was continuing to travel "at extremely high rates of speed for city streets and the amount of traffic that was out at that time." *Id*. at 22. Defendant ultimately lost control of the Charger "and struck a large stone retaining wall that ran east to west along the north side of North Street." *Id*. at 23.

When Officer Whistler arrived at the scene, he observed an unidentified female talking with Defendant from the passenger side of the vehicle. According to Officer Whistler, the passenger side door was already open, and the driver was "lean[ing] across the center console attempting to climb out of the passenger side of the vehicle, but it was apparent that he was unable to make that transition on his own." *Id*. at 24. Officer Whistler ordered the female away from the vehicle. She complied and left the scene. By then, the Charger was engulfed in flames. *Id*. at 25. Officer Whistler approached the passenger side of the vehicle and pulled Defendant to safety near his patrol vehicle. Body camera footage shows that by 2:52 p.m., Defendant was safely lying in the middle of the road to the side of Officer Whistler's patrol vehicle. It was clear Defendant was injured. Officers on the scene deduced that Defendant had not been wearing his seatbelt and the steering wheel was broken. Police officers attempted to put the fire out with fire extinguishers;

3

however, they were unsuccessful. The damage to Defendant's Charger was extensive. The collision rendered it inoperable. Officer Whistler testified that "[t]he entire front end of the vehicle appeared to be pushed back into the dashboard of the vehicle. It all kind of melded together." *Id*. at 27. The vehicle was also blocking a sidewalk right in front of a house on North Street.

When Cape Girardeau Police Officer Jason Angle responded to the accident scene, he observed that the Charger had collided with the retaining wall on the north side of the intersection of North Street and Ellis Street, there was a fire in the engine compartment of the vehicle, fluids were leaking from the vehicle, it was blocking the sidewalk, and appeared to be inoperable. Based on these observations, Officer Angle determined that the Charger had to be towed.  He obtained a "Crash Report" form and a "Crime Inquiry and Inspection Report/Authorization" (tow sheet) from the trunk of his patrol car at 2:58 p.m. and filled them out pursuant to police policy. The Police Department for the City of Cape Girardeau has a written policy (tow policy) relative to towing vehicles.  The tow policy requires that impounded or seized vehicles be towed and searched prior to being towed.  That policy also applies to vehicles damaged in traffic accidents.

Cape Girardeau Police Officer Cody Owens, an evidence technician, also responded to the scene of the accident.  He, too, was familiar with the tow policy. Officer Owens related that the Police Department's tow policy was "[e]ssentially if a vehicle is inoperable or is causing some type of traffic hazard or pedestrian hazard, it has to be towed." *Id*. at 65. Officer Owens testified, consistent with the tow policy, that the Charger had to be inventoried before it was towed. *Id*. at 66. When Cape Girardeau Police Corporal Cody Farrow arrived on the scene, he noted the Charger was on fire as flames were coming out from under the hood of the vehicle.  He was also familiar with the tow policy, including the requirement that the vehicle be inventoried prior to being towed. He initially inspected the vehicle to be sure there was not anything that would pose a danger like

4

"obvious aerosols, or anything like that." *Id*. at 75. Section III E. of the tow policy provides, in pertinent part, "Vehicles impounded or seized by the Department shall be inventoried. All containers, locked, sealed, or unsealed shall be opened to check for hazardous material and the contents inventoried." Around 3:01 p.m., the fire department was wrapping up the effort to extinguish the fire. About that time, Officer Whistler shared with Cape Girardeau Police Sergeant Blanner that he observed what he estimated to be a couple thousand dollars in cash while conducting a protective frisk of Defendant after removing him from the Charger. Whistler further commented that the woman who was at the accident scene "was like trying to help him out but trying to like climb over him into the car, and, uh, he was telling her something, and she took off running." Next, the following exchange occurred:

> Blanner: Have we searched the vehicle?
>
> Whistler: Not yet.
>
> Blanner: Let's go ahead and do that. There's going to be stuff in it.
>
> Whistler: I don't, I don't want to die in a fire, Serge.
>
> Blanner: It's not burnin' now. The heroes came and put it out.

When Cpl. Farrow and Officer Owens were ready to initiate a search of the Charger, the fire department determined they needed to spray the engine down again. Farrow and Owens subsequently began an inventory search in earnest at approximately 3:03 p.m. From the rear passenger door, Officer Owens observed a firearm wedged between the driver's seat and the center console. He reported, "Hey, we got a gun right here. . . we got a gun, Whistler." Officer Whistler replied, "Yeah, that's probably what he was havin' her get in here to try to get. 'Cause she was trying to get over him to f---in get in this car." Cpl. Farrow, who was searching from the front passenger side of the Charger, recovered the pistol, rendered it safe, then gave it to Officer Owens.

5

The pistol was a Walther, Model PPX nine-millimeter, semi-automatic pistol. The magazine for the pistol was loaded with fifteen rounds of ammunition. The Missouri Uniform Crash Report for the accident was prepared by Officer Angle. Defendant was transported to the hospital and the car was towed away by Sperling's Garage.

## II. Legal Standard

Under 28 U.S.C. § 636(b)(1), when a party objects to a magistrate judge's report and recommendation, the district judge must conduct a de novo review of the portions of the report, findings, or recommendations to which the party objected; "A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003) (citing 28 U.S.C. § 636(b)(1)). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); *see also* Fed. R. Crim. P. 59(b)(3) ("The district judge may accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions.").

## III. Discussion

### A. Motion to Suppress Firearm

Defendant concedes that the Charger was inoperable after the crash, that it needed to be towed from the scene, and that the police department "has a tow-policy which calls for a pre-tow inventory search." Doc. [67] at 2. Defendant questions whether the search of his car was conducted pursuant to the police department's tow policy, or "whether it was a warrantless search for contraband." *Id*. Defendant claims "[t]he police assumed [he] was a drug dealer and they wanted to search his car, so they did." *Id*. at 6. He argues that the officers' comments at the scene of the

6

accident captured by police bodycam footage are "conclusive evidence that claims of an inventory search are merely window dressing for what was in fact a warrantless search for contraband." *Id*. at 5.  The Government argues in response that the inventory search was proper and that even if it were found not to be a proper search, the inevitable discovery doctrine would apply.

An inventory search must be reasonable under the totality of the circumstances. *United States v. Nielsen*, 74 F.4th 572, 577 (8th Cir. 2023) (citing *United States v. Taylor*, 636 F.3d 461, 464 (8th Cir. 2011). "When officers conduct an inventory search according to standardized police procedures, the reasonableness requirement is generally met." *Id*. (citing *United States v. Morris*, 915 F.3d 552, 557 (8th Cir. 2019)). "[O]fficers 'may keep their eyes open for potentially incriminating items that they might discover in the course of an inventory search, as long as their *sole purpose* is not to investigate a crime.'" *Id*. (quoting *United States v. Petty*, 367 F.3d 1009, 1013 (8th Cir. 2004) (emphasis added) (citation omitted).

After a de novo review of the record, this Court agrees with the Recommendation that the inventory search, pursuant to the tow policy, was reasonable based upon the totality of the circumstances. As stated in the Recommendation, "[t]he general belief by the officers who responded to the accident scene that there was likely evidence of a crime in the Charger after [Defendant] attempted to flee Officer Whistler at speeds near 100 miles per hour does not invalidate the inventory search." Doc. [73] at 9. Defendant continued to attempt to flee after crashing the vehicle into a stone retaining wall, despite being injured. Defendant's actions and need for medical assistance, notwithstanding, the vehicle was inoperable, on fire, smashed into a retaining wall, on a sidewalk, in front of a house. The vehicle had to be moved by the authorities once the fire was extinguished, pursuant to the tow policy. Defendant's Motion to Suppress Evidence will be denied.

7

### B. Motion to Dismiss Indictment

As stated previously, Defendant was indicted on one count of possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1) and 924(e). Defendant was prohibited from possessing a firearm because he had previously been convicted of one or more crimes that were punishable by a term of imprisonment exceeding one year. The Indictment further alleges that prior to possessing the firearm on April 2, 2022, "[Defendant] was convicted of at least three felony offenses which were either violent felonies or felony drug offenses which were committed on occasions different from one another." Doc. [2]. Defendant raises a facial challenge to the constitutionality of § 922(g)(1), arguing that the Supreme Court's decision in *New York Rifle and Pistol Association v. Bruen*, 142 S. Ct. 2111 (2022), renders that statute incompatible with the Second Amendment right to bear arms.

Defendant purports to bring a facial challenge against § 922(g)(1). Doc. [46] at 4 ("For these reasons and others set forth below, the Court should declare § 922(g)(1) facially unconstitutional and dismiss Count 1 of the indictment."). To successfully mount a facial challenge, Defendant "must establish that no set of circumstances exists under which [§ 922(g)(1)] would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). The problem for Defendant, though, is that the Court of Appeals for the Eighth Circuit has already concluded that "§ 922(g)(1) [wa]s not unconstitutional as applied to [a defendant] based on his particular felony convictions." *United States v. Jackson*, 69 F.4th 495, 501 (8th Cir. 2023). *Jackson* necessarily means that Defendant's facial challenge fails. *See Salerno*, 481 U.S. at 745; *United States v. Inzunza*, 638 F.3d 1006, 1019 (9th Cir. 2011) (holding that a facial challenge to a statute necessarily failed where court of appeals previously upheld statute against as-applied challenges because, in a facial challenge, the plaintiff must "establish that no set of circumstances exists under which the [statute]

8

would be valid").

Although Defendant does not purport to bring an as-applied challenge here, even if the Court stretched to find one, it too would fail under binding precedent. *See United States v. Cunningham*, 70 F.4th 502, 506 (8th Cir. 2023) ("The longstanding prohibition on possession of firearms by felons is constitutional, and the district court properly denied the motion to dismiss."); *see also United States v. Jackson*, --- F.4th ----, 22-2870, 2023 WL 5605618, at *1 (8th Cir. Aug. 30, 2023) (Stras, J., dissenting from the denial of rehearing en banc) (describing *Jackson* and *Cunningham* as "cutting off as-applied challenges to the federal felon-in-possession statute").

Upon a de novo review of the record and applicable law this Court agrees with Judge Crites-Leoni's conclusion that Defendant's Motion to Dismiss the Indictment asserting a facial challenge to the constitutionality of § 922(g)(1) should be denied.

### IV. Conclusion

The Court has conducted a de novo review of all matters relative to Defendant's Motions and Objections, including a thorough review of the transcript of the evidentiary hearing and the exhibits provided by the parties. After careful consideration, the Court will adopt and sustain, as modified, Judge Crites-Leoni's Report and Recommendations and deny Defendant's Motions.

Accordingly,

**IT IS HEREBY ORDERED** that the Report and Recommendations of United States Magistrate Judge Crites-Leoni's, Docs. [72] and [73], are **SUSTAINED, ADOPTED, AND INCORPORATED,** as **MODIFIED.**

**IT IS FURTHER ORDERED** that Defendant's Objections to the Report and Recommendations, Doc. [76], are **OVERRULED**.

**IT IS FURTHER ORDERDED** that Defendant's Motion to Dismiss the Indictment,

9

Doc. [45], is **DENIED**.

      **IT IS FINALLY ORDERDED** that Defendant's Motion to Suppress Evidence, Doc. [47], is **DENIED**.

Dated this 14th day of November, 2023

                                                  MATTHEW T. SCHELP
                                                  UNITED STATES DISTRICT JUDGE